IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN MONTGOMERY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.  19-cv-1300-SMY |
| CARIBE TRANSPORT II, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff filed his complaint on November 26, 2019 alleging he sustained injuries related to a December 7, 2017 collision involving a tractor-trailer driven by Plaintiff and a tractor-trailer driven by Defendant Yosniel Varela-Mojena.  Plaintiff alleges that Defendants Caribe Transport II, LLC and/or Caribe Transport, LLC ("Caribe Defendants") owned and operated the tractor-trailer driven by Defendant Mojena.  Plaintiff further alleges the Mojena and the Caribe Defendants were hauling the trailer load at the time of the crash because Defendants C.H. Robinson Worldwide, Inc., C.H. Robinson Company, C.H. Robinson Company, Inc., and C.H. Robinson International, Inc. ("C.H. Robinson Defendants") had brokered the load to them for transport.

Plaintiff sets forth a claim of vicarious liability negligence (Count IV) and negligent hiring of Caribe Transport II, LLC and Varela-Mojena (Counts V and VI) against the C.H. Robinson Defendants.

This matter is before the Court on three Motions to Compel filed by Plaintiff (Docs. 97, 98, and 100).  C.H. Robinson Defendants have responded to said motions (Docs. 107-109).  The Court addresses each motion in turn, as set forth below.

**<u>Disputed First Motion to Compel C.H. Robinson Defendants (Doc. 97)</u>**

In this motion, Plaintiff explains that during the deposition of Bruce Johnson, an executive and Rule 30(b)(6) corporate representative for C.H. Robinson, he was questioned concerning a testimonial included on C.H. Robinson's website from a company identified as Zana Transportation Services. The testimonial included a statement that "my [Robinson] account representative helps us manage loads and is an extension of our company." (*See* Doc. 97-2 at 6). Plaintiff asserts that less than 48 hours after Johnson's deposition, this statement had been removed from the testimonial included on C.H. Robinson's website.

Plaintiff subsequently sent a Rule 30(b)(6) deposition notice to depose a C.H. Robinson representative to testify about: (A) when the statement from the testimonial was first placed on the website and all dates when it remained on the website; (B) who obtained the testimonial, when it was obtained, and why it was obtained; (C) who placed the statement at issue from the testimonial on the C.H. Robinson website, why it was placed on the site, and all dates when it was placed and remained on the website; (D) the reasons for placing the testimonial statement on the C.H. Robinson website; and (E) the date when the statement from the testimonial was removed from the C.H. Robinson website, the reasons for removal, and who participated in said removal decision (*see* Doc. 97-5).

C.H. Robinson has refused to produce a corporate representative in response to the Rule 30(b)(6) request detailed above. Plaintiff asks the Court to compel a corporate representative deposition on the above-mentioned topics arguing such deposition is within the bounds of relevancy contemplated by the Federal Rules. More specifically, Plaintiff asserts C.H. Robinson's placement of the statement from Zana Transportation Services on its website were potential admissions relevant to the contested issue of agency — whether C.H. Robinson controls

or has the right to control carriers with whom it contracts to transport C.H. Robinson's loads to such an extent that C.H. Robinson effectively "manages" its hauled loads so as to become "an extension" of its contracted carriers.

C.H. Robinson objects to Plaintiff's Rule 30(b)(6) deposition notice at issue. C.H. Robinson contends it has produced three employees for depositions and requiring another representative to testify about a single comment on C.H. Robinson's website from a non-party motor carrier is not relevant, burdensome, and will not aid in resolving the alleged agency issue.

As a preliminary matter, the Court addresses the proper scope of discovery. The scope of discovery is set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure. The current language of the Rule provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Supreme Court has cautioned that the requirement under Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where necessary. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *see also Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). However, "relevancy" for discovery purposes is construed broadly to encompass matters that bear on, or reasonably could lead to other matters that could bear on, any issue in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). "Relevance is not inherent in any item of evidence, but

exists only as a relation between an item of evidence and the matter properly provable in the case." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 722 (N.D. Ill. Jan. 6, 2014) (citation omitted).

Further, under Rule 26, "the parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733, at *2 (N.D. Ill. Nov. 10, 2021) (citing Fed. R. Civ. P. 26, advisory committee notes to 2015 amendment). The court in *Arsberry* set forth the following discussion regarding the analysis of proportionality:

> [P]roportionality "is not self-defining; it requires a common sense and experiential assessment." *Generation Brands, LLC v. Décor Selections, LLC*, 19 C 6185, 2021 WL 780485, at *2 (N.D. Ill. Mar. 1, 2021). "[T]he key … is careful and realistic assessment of actual need" that may "require the active involvement of … the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016). However, courts are not required to re-write discovery requests, and frequently decline to do so. *See Elwyn Robinson v. PPG Industries, Inc. et al.*, CV19040330DWRAOX, 2021 WL 4497222, at *6 (C.D. Cal. July 23, 2021); *Settlemyer v. Borg-Warner Morse TEC, LLC*, 1:19 CV 344 MR WCM, 2021 WL 66411, at *3 (W.D.N.C. Jan. 7, 2021); *Ye v. Cliff Veissman, Inc.*, 14-CV-01531, 2016 WL 950948, at *4 (N.D. Ill. Mar. 7, 2016); *Annex Books, Inc. v. City of Indianapolis*, 103CV))918SEBTAB, 2011 WL 13305341, at *3 (S.D. Ind. Feb. 18, 2011).

In this instance, Plaintiff seeks the deposition at issue to obtain information he asserts will be relevant to the issue of agency. In Illinois, "the test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Beck v. XPO Express, Inc.*, No. 3:16-cv-668-DRH-RJD, 2017 WL 4777088, at *2 (S.D. Ill. Oct. 22, 2017) (citing *Chemtool, Inc. v. Lubrication Tech, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998)). "The

existence of an agency relationship may be established and its nature and extent shown by direct or circumstantial evidence." *In re Telesphere Communications, Inc.*, 205 B.R. 535, 543 (N.D. Ill. Jan. 29, 1997) (citing *City of Evanston v. Piotrowicz*, 20 Ill.2d 512, 518 (1960) (other citation omitted)). "Although an agency relationship need not be based on an express appointment and acceptance, such an express agreement is relevant to establishing the existence of an agency relationship." *Id.* (citation omitted). "Other relevant factors include the situation of the parties, their conduct, and other relevant circumstances pertaining to this question." *Id.* (citations omitted).

Notably, the question of agency and evidence thereto clearly relates to the parties whose relationship is at issue. Here, the evidence sought relates to statements made by a third-party concerning its relationship with C.H. Robinson. Decisions and circumstances related to C.H. Robinson's presentment of a statement made by a non-party on its website does not bear on C.H. Robinson's relationship with co-Defendants. Insofar as Plaintiff asserts C.H. Robinson's decision to place Zana Transportation's statement on its website acts as an admission concerning its agency of co-Defendants, such a connection is severely tenuous. Indeed, it is so tenuous that any potential relevancy concerning the placement of this statement on the website is not proportional to the needs of the case, particularly when considering C.H. Robinson has already produced three employees for depositions and there is no indication that the fourth deposition Plaintiff now seeks has any bearing on the relationship between C.H. Robinson and any co-Defendant.

For these reasons, Plaintiff's First Motion to Compel (Doc. 97) is **DENIED**.

**Disputed Second Motion to Compel C.H. Robinson Defendants (Doc. 98)**

In this motion, Plaintiff again seeks discovery he purports is relevant to the issue of agency as alleged in his complaint. Plaintiff cites C.H. Robinson's contract with Caribe for the load at issue wherein it states that "C.H. Robinson requires automated shipment check-in and in-transit updates from one of the approved shipment status technologies." (*See* Doc. 98-1). In compliance with said provision, Defendant Mojena downloaded the MacroPoint software application to his cellphone. MacroPoint is a shipment status technology application approved by C.H. Robinson and used by Mojena to provide satellite location tracking data for the load before, during, and after the crash at issue (*see* Doc. 98-2).

Plaintiff asserts that MacroPoint's company website contains statements wherein it describes its service as providing "control" for brokers' loads (*see* Docs. 98-3 and 98-4). Plaintiff notes that C.H. Robinson's company logo is present in at least two places on the MacroPoint website (*see id.*). Plaintiff also references a press release describing the relationship between C.H. Robinson and MacroPoint stating that MacroPoint technology is "designed to help manufacturers, retailers, distributors and logistics services providers gain better control of freight movement through real-time location, status, and estimated-time-of-arrival (ETA) data on their shipments (*see* Doc. 98-5).

Plaintiff asserts he requested production of the contract between C.H. Robinson and MacroPoint that was in effect at the time of the crash at issue in his Second Requests for Production directed to C.H. Robinson (*see* Doc. 98-7). Plaintiff asserts this contract is relevant insofar as "[i]t is possible, if not likely," that said contract will "describe why Robinson contracted with Macropoints and the reasons, types, and descriptions of services which Macropoints provided to Robinson." Plaintiff asserts that statements similar to those published on MacroPoint's website

concerning "control" are likely included in the requested contract and, therefore, the contract between C.H. Robinson and MacroPoint could contain possible agency-related admissions. As such, Plaintiff asks the Court to overrule C.H. Robinson's objections to Plaintiff's Second Request for Production #1 and order production of the contract between C.H. Robinson and MacroPoint.

C.H. Robinson opposes Plaintiff's motion, explaining C.H. Robinson has produced all MacroPoint data in its possession for the load at issue in this case, and argues that Plaintiff has failed to explain how its contact with MacroPoint will prove that C.H. Robinson controlled or had the right to control Caribe or Mojena at the time of the accident. The Court agrees.

While the Court recognizes that relevancy should be construed broadly, Plaintiff's attempt to tie the contract between MacroPoint and C.H. Robinson to the issue of an agency relationship between C.H. Robinson and co-Defendants requires inference upon inference and stretches the bounds of relevancy beyond reasonable limits. Similar to the finding above, Plaintiff's request does not bear on the question of C.H. Robinson's control or right to control co-Defendants — that is the relevant issue in this lawsuit. As noted by C.H. Robinson, the role MacroPoint played in the relationship between Caribe and Robinson was the tracking of the location of the shipment, and such information has already been produced.

For these reasons, Plaintiff's Second Motion to Compel (Doc. 98) is **DENIED**.

### Disputed Third Motion to Compel C.H. Robinson Defendants (Doc. 100)

Plaintiff seeks discovery related to his Illinois state law cause of action that C.H. Robinson negligently hired, retained, and selected Caribe and Mojena Defendants to drive the route and haul the load that was being transported when the crash occurred.

In response to Plaintiff's initial discovery requests, C.H. Robinson indicated that it obtained electronic data on all of its contracted carriers from a third-party vendor later identified as Registry

Monitoring Insurance Services ("RMIS") (Doc. 100-1 at 2-3; *see* Doc. 100-2).  C.H. Robinson received data including each carriers' overall government safety rating, its insurance status, and other information from RMIS.   During Bruce Johnson's Rule 30(b)(6) deposition, he testified that RMIS had "different levels of carrier-related information" it could have provided to C.H. Robinson (Doc. 100-2).   C.H. Robinson executive Lori Taylor testified that among information provided by RMIS to C.H. Robinson was "Safety Rating Alerts" that listed the carriers with whom C.H. Robinson contracted whose safety ratings had changed (Doc. 100-3 at 3-4).

Following the depositions of Taylor and Johnson, Plaintiff sent C.H. Robinson his Third Requests for Production (Doc. 100-4) seeking the following:

1. The contracts or agreements in effect at the time of the occurrence between you and RMIS (aka Registry Monitoring Insurance Services) person or entity which allowed or permitted RMIS to obtain for and provide C.H. Robinson any information or data pertaining to motor vehicle carriers with whom C.H. Robinson contracted to haul or carry loads. This includes but is not limited to any documents which describe or reference the types of information RMIS agreed to and did provide to C.H. Robinson in 2017. (This request *excludes* the actual information RMIS provided to C.H. Robinson as to any specific carriers).

2. Any information, correspondence, communications, advertising materials, solicitations or other documents which reference, pertain to or describe the types of information, data or services which RMIS offered to or could provide to C.H. Robinson related to motor vehicle carriers with whom C.H. Robinson contracted to haul or carry loads which C.H. Robinson declined, modified or refused to receive or accept from RMIS for the period of December 2017 and prior thereto.

3. Documents which set out, reference or pertain to any information, data, records, communications which RMIS provided to or received from C.H. Robinson related to Caribe Transport II, LLC or Caribe Transport, LLC.

C.H. Robinson objected to each of the above requests.   Plaintiff asserts each request seeks information relevant to Counts V and VI insofar as said information relates to C.H. Robinson's knowledge, or ability to obtain knowledge, concerning Caribes' safety record and other pertinent carrier information.

C.H. Robinson stands on its objections and further asserts the requests at issue are not proportional to the needs of the case. C.H. Robinson explains that its contract with RMIS began in 2016 and that C.H. Robinson receives three types of data from RMIS, including: (1) a motor carriers' authority to operate; (2) the overall FMCSA safety rating for the motor carrier; and (3) for new carriers, insurance information (Doc. 109-1 at 2-3). C.H. Robinson argues that Plaintiff's negligent hiring claim focuses on what it knew about Caribe when it brokered the load at issue in December 2017 and that said claim focuses on Caribe's FMCSA safety rating when C.H. Robinson brokered the load and whether Robinson knew about that rating. C.H. Robinson argues the contract between it and RMIS does not help resolve the negligent hiring claim because there is no evidence or testimony showing or implying that C.H. Robinson received anything from RMIS other than a motor carrier's authority to operate and the carrier's FMCSA safety rating. C.H. Robinson also argues the documents sought in Requests 2 and 3 are not proportional to the needs of the case, as Request 2 would require production of every document in C.H. Robinson's possession that mentions or incorporates RMIS data for every motor carrier since it began contracting with RMIS in 2016 through December 2017. C.H. Robinson also complains that Request 3 is not limited to the time surrounding the load at issue.

The Court finds C.H. Robinson's articulation of relevancy too narrow in this instance. Indeed, relevance does not require that documents or information sought resolve a particular issue. Rather, as stated above, relevance encompasses matters that bear on, or reasonably could lead to other matters that could bear on, any issue in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). With regard to Request 1, the documents sought by Plaintiff certainly bear on C.H. Robinson's knowledge or ability to obtain knowledge of information related to the Caribe Defendants' safety as a motor carrier. As such, the Court **OVERRULES** Robinson's objection

to Request 1 of Plaintiff's Third Requests for Production.

Request 2 also seeks documents bearing on C.H. Robinson's ability to obtain safety information on carriers such as Caribe, which could be relevant to issues in Counts V and VI. As such, C.H. Robinson's objection to this request is **OVERRULED**. Finally, Request 3 seeks relevant information insofar as Plaintiff seeks the actual information sent by RMIS to C.H. Robinson concerning Caribe Transport II, LLC or Caribe Transport, LLC. This clearly bears on issues in Count V of the Complaint. However, the Court finds this request has no limitation on time. Based on the allegations of the Complaint, the accident occurred on December 7, 2017. C.H. Robinson began contracting with RMIS in 2016. The Court therefore limits Request 3 from the time in which C.H. Robinson initiated its contract with RMIS in 2016 through January 2018. C.H. Robinson's objection to Request 3 is **SUSTAINED IN PART AND OVERRULED IN PART**. C.H. Robinson shall respond to this request for the timeframe 2016 through January 2018.

Plaintiff's Third Motion to Compel (Doc. 100) is **GRANTED IN PART AND DENIED IN PART**.

C.H. Robinson shall provide its responses to Plaintiff's Requests 1-3 of the Third Requests for Production as directed in this Order by **April 3, 2023**.

**IT IS SO ORDERED.**

**DATED: March 2, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
