IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN MONTGOMERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-CV-1300-SMY |
| | ) |
| CARIBE TRANSPORT II, LLC, et al, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants C.H. Robinson Company, C.H. Robinson Company, Inc., C.H. Robinson International, Inc. and C.H. Robinson Worldwide, Inc. (collectively, "Robinson") (Doc. 126). Plaintiff responded in opposition to the motion (Docs. 138, 139). For the following reasons, the Motion for Summary Judgment is **GRANTED** as to Count IV (Vicarious Liability) only.

## Background

The following material facts are undisputed unless otherwise noted: On December 7, 2017, Defendant Varela-Mojena, a truck driver, was hauling plastic pots in his trailer for Defendant Caribe Transport II[1] when he crashed into Plaintiff in Illinois (Doc. 138-3 at 12:24-13:5, 129:10-16). The load of plastic pots had been brokered by Robinson (Doc. 138-3 at 166:11-14).

At all relevant times, Robinson was a property freight broker registered with the Federal Motor Carrier Safety Administration (Doc. 128-1 at 25:1-15). Property freight brokers arrange transportation between motor carriers and shippers of goods (Doc. 138-1 at 25:6-15). When a shipper has a load that requires shipping, they contact Robinson to "arrange for transportation with

---

[1] While there is testimony in the record by Luis Lopez as to the distinction between Caribe I and Caribe II, it is not significant for purposes of this motion. Therefore, "Caribe" will be used herein to refer to the Caribe entity involved in the accident that is the subject of this lawsuit.

the motor carrier to move the products from point A to point B" (Doc. 138-1 at 38:10-15). Robinson communicates with the motor carrier, including relaying information from the shipper to the carrier (Doc. 138-1 at 39:1-6).

At all relevant times, Luis Lopez was the owner and manager of Caribe and responsible for the hiring and firing of drivers (Doc. 138-2 at 16:6-10, 345:17-346:4). Lopez was the only dispatcher (Doc. 138-2 at 80:10-16).

On November 28, 2016, Robinson and Caribe entered into a "Contract for Motor Contract Carrier Services" ("Carrier Agreement") (Doc. 128-5, p. 2). The Carrier Agreement provided that Caribe was an independent contractor of Robinson, and that Caribe shall exercise "exclusive control, supervision, and direction over (i) the manner in which transportation services are provided; (ii) the persons engaged in providing transportation services; and (iii) the equipment selected and used to provide transportation services" (Doc. 128-5, p. 7). Lopez testified that Robinson paid a factoring company who took a percentage and then paid Caribe (Doc. 138-2 at 88:5-89:1, 336:4-5). Varela-Mojena testified that Robinson paid Luis Lopez, who then paid Varela-Mojena (Doc. 138-3 at 169:13-14).

In practice, the brokerage arrangement worked as follows: Robinson maintained an online load board that showed available loads, including pickup and delivery locations (Doc. 138-2 at 57:21-59:14). The drivers could tell Caribe where "they want to go," and Lopez would "find what's the best load in those parameters of where they want to go" (Doc. 138-2 at 75:6-16). If Caribe wanted to deliver a load, it called a Robinson representative who provided further information, such as the pick-up and drop-off times and the payment terms (Doc. 138-2 at 59:7-23). Caribe did not have to accept an unsuitable load, as it worked with over 200 other brokers across the country (Doc. 138-2 at 76:4-78:20). If Caribe wanted to ship a load brokered by

Robinson, they would ask for a rate confirmation by e-mail and then forward it to a waiting driver (Doc. 138-2 at 60:5-62:13).

Robinson did not provide training on truck driving to Caribe or its drivers or review Caribe's logbooks or driving records. Caribe's drivers did not wear Robinson clothing or uniforms. Caribe never held itself out as having the ability to enter a contract on Robinson's behalf, and the words "C.H. Robinson" did not appear on Caribe's trucks or trailers (Doc. 138-2 at 350:1-352:7, 377:11-378:13). Robinson did not provide equipment or tools to Caribe or its drivers for hauling loads (Doc. 138-2 at 349:8-11). Robinson did not obtain any insurance for Caribe (Doc. 138-2 at 346:8-11). Robinson did not pay for fuel expenses, tolls, or maintenance or repairs on Caribe trucks or trailers (Doc. 138-2 at 348:4-21).

On or about December 6, 2017, Caribe accepted a load of plastic pots from Ohio to Arkansas and later Texas for a flat rate of $2,600 (Doc. 138-2 at 264:9-265:1, 361:14-24; Doc. 128-7, p. 2-3). The acceptance was memorialized in a "[Robinson] Contract Addendum and Carrier Load Confirmation" (Doc. 128-7). The Addendum contained additional terms, including that the flat rate was contingent upon "successful and on-time completion of all load terms" and that Caribe would provide Robinson with periodic tracking updates (Doc. 128-7, p. 4). The load confirmation did not have driving directions (Doc. 138-2 at 290:24-291:7). Lopez testified that driving routes were "not up to [Robinson]" and that drivers could select less optimal or direct routes if they had, for instance, "too much of a steep [grade]" (Doc. 138-2 at 293:4-24; Doc. 138-3 at 179:5-12). Lopez further testified that the "equipment" listed by Robinson on the Addendum was likely mandated by the shipper and that they could not pick up the load without it (Doc. 138-2 at 365:8-366:9).

Robinson's Senior Carrier Account Manager, Mark Musgrave, testified that Caribe provided tracking updates to Robinson by using a vehicle with technological capabilities (Doc. 138-4 at 128:14-129:1). Varela-Mojena used a mobile application called MacroPoint for the load, which was downloaded to his phone and provided updates on his location (Doc. 138-1 at 177:3-178:13, 255:3-256:9; Doc. 138-3 at 211:6-20). Robinson's executive, Bruce Johnson, also testified that Robinson used the MacroPoint program only to know "when something's not going to turn out the way they [had] expected" (Doc. 138-1 at 314:10-14). There is no indication in the record that Robinson interacted with the MacroPoint application (Doc. 138-1 at 313:23-314:8). If there was damage to a load, Lopez could call someone at Robinson for further handling (Doc. 138-2 at 98:21-100:12).

Caribe assigned the load to Varela-Mojena (Doc. 138-2 at 377:6-10). Robinson did not own Varela-Mojena's truck or equipment, did not instruct him on how to drive (including speed or lanes) or the rules of the road, did not tell him when to take breaks, did not procure insurance for him, and did not ask to review his logbooks (Doc. 138-3 at 179:5-14, 209:3-210:14, 214:14-16, 219:5-220:13). Varela-Mojena called Lopez to notify him about the accident, after which Lopez notified Robinson (Doc. 138-2 at 304:15-305:3, 308:13-18).

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue

of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Robinson moves for summary judgment on Plaintiff's vicarious liability claim against it (Count IV),[2] arguing that because Caribe is not their agent, but rather is an independent contractor, Caribe's liability for Plaintiff's injury cannot be imputed to them. Under the doctrine of *respondeat superior,* a principal may be held liable for its agent's negligence that caused a plaintiff's injury even if the principal itself was not negligent. *Woods v. Cole,* 181 Ill.2d 512, 517 (1998). But a principal is not vicariously liable for the conduct of an independent contractor. *Petrovich v. Share Health Plan of Ill., Inc.,* 188 Ill.2d 17, 31 (1999).

Although the agreement between Robinson and Caribe identifies Caribe as an independent contractor, this label is not dispositive. *Sperl v. C.H. Robinson Worldwide, Inc.,* 408 Ill.App.3d 1051, 1057 (2011). What is determinative is the level of control over the manner of work performance. *Horwitz v. Holabird & Root,* 212 Ill.2d 1, 13 (2004). Significantly, under Illinois law, freight brokers are generally not vicariously liable for accidents caused by the motor carriers or drivers with whom they work. *Kolchinsky v. W. Dairy Transport, LLC,* 949 F.3d 1010, 1014 (7th Cir. 2020) ("[Illinois courts] consistently have declined to find an agency relationship when a company hires an independent driver to deliver a load to designated persons at designated hours but does not reserve the right to control the manner of delivery"). That is true even where, such as here, brokers impose communication or equipment requirements on carriers. *Id.* at 1013-1014 (the carrier contacting the broker at various times and "the fact that [broker] provided [carrier] with trailers also cannot support a finding of an agency relationship").

---

[2] Robinson previously moved for judgment on the pleadings with respect to the other counts against it for negligent hiring (Counts V and VI). This motion remains pending under advisement (Doc. 124).

Plaintiff argues however that Robinson retained control over certain aspects of the transportation process, which creates an issue of fact as to whether Caribe acted as Robinson's agent: (1) regular communication and tracking updates with the Macropoint software, including the immediate notification about any delays; (2) lengthy requirements about how to store the load, what equipment should be used, and a fuel surcharge; (3) Robinson's ability to troubleshoot and provide solutions to Caribe and its drivers; and (4) typographical issues on the bills of lading. But these activities do not demonstrate a retained right to control the manner of delivery that is tantamount to a principal-agent relationship. See, *Dowe v. Birmingham Steel Corp.*, 963 N.E.2d 344, 351-352 (2011) (finding no agency relationship even where the broker chose the route, set hours, and provided and maintained equipment and insurance); *Shoemaker v. Elmhurst–Chicago Stone Co.,* 273 Ill.App.3d 916 (1994) (holding that shipping requirements were preliminary tasks necessary for the job and driving instructions were not tantamount to control).[3]

Contrary to Plaintiff's contention, the evidence on record demonstrates that Robinson and Caribe had an arm's length relationship – they communicated about issues when warranted or desirable but Robinson did not have the "right" to direct Varela-Mojena or Caribe on manner of delivery specifics. Caribe selected the loads that it desired to fulfill in consultation with its drivers, and Varela-Mojena drove however he wished while providing periodic updates to Robinson. And as previously noted, Robinson did not provide training to Caribe's drivers, review Caribe's logbooks or driving records, provide equipment or tools for hauling loads to Caribe or its drivers, obtain insurance for Caribe, or pay for fuel expenses, tolls, or maintenance or repairs on Caribe trucks or trailers.

---

[3] Plaintiff refers to addendums and general practice from other loads that Robinson brokered for Caribe, which are irrelevant to the question of an agency relationship at the time of this accident. Creation of the Agency Relationship, 7 Ill. Prac., Business Organizations § 2:2 (2d ed.) (July 2022 Update) ("even though an agency relationship may exist at one point in time, it may not exist at another point in time").

In sum, the evidence is insufficient to support a finding of a principal-agency relationship between Robinson and Caribe or Varela-Mojena. Therefore, the Robinson Defendants are entitled to summary judgment with respect to Count IV.

### Conclusion

For the foregoing reasons, the Motion for Summary Judgment (Doc. 126) is **GRANTED** as to Count IV (Vicarious Liability). The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**

**DATED: November 3, 2023**

**STACI M. YANDLE**
**United States District Judge**